Comstock, Ch. J.
 

 (Dissenting.) When the vessel was- set on fire by lightning, the lives of the passengers and the safety of
 
 *49
 
 the ship and entire cargo were endangered. The employment of the Danish vessel -as convoy to attend the Galena into the port of Charleston was, therefore, a measure demanded by the common peril • The expense of that employment was consequently a loss to be borne by the owners of the ship and the various owners of the cargo, according to the principles of general average. Very plainly the specie, if it had not been removed, would be bound to contribute to this expense equally with the residue of the cargo, and quite as plainly its removal to the Danish vessel, which was a place of safety, did not relieve it from that liability.
 

 But when the specie was once removed it became separated from the common peril, and the question is whether it was liable for losses and expenditures afterwards incurred in saving the ship and cargo which remained on board. The loss and expense were mainly incurred in the port of Charleston, where the vessel was filled with water in order to extinguish the fire. By that proceeding the ship and the cotton on board sustained a very serious damage. The specie had been landed from the Danish brig and was not involved in the peril.
 

 All the authorities agree in the statement of the general rule on this subject. That rule is that where expenses are incurred or sacrifices made voluntarily for the safety of ship, freight and cargo, a general average will take place provided the purpose of the sacrifice or expense is accomplished. (3 Kent, 232; 2 Arnould on Ins., 876, 877; Phillips on Ins., 331, 334.) This doctrine is founded on a plain principle of natural equity, but the terms in which it is universally stated certainly do not include a ease like the present one. Beyond the employment of the Danish vessel, no act was done or expense incurred, having anything to do with the safety of the specie. The ship and the remaining cargo were saved by the subsequent proceedings, and according to natural justice they should bear the losses incurred.
 

 It is claimed, however, that where a peril occurs, no part of the cargo can be withdrawn or separated from it so as to be relieved from contribution for all the sacrifices made and ex
 
 *50
 
 penses incurred at any time before the peril is entirely past, The owner of the ship and all the owners of a cargo are bound, it is said, by a compact of agreement with each other which prevents any one of them from relieving his own property from the common danger so as to exempt it from the losses ' which may afterwards happen to others in saving theirs from the same danger. But there is no such compact or agreement. There is no agreement at all on the subject. The principles of justice on which general average is founded may lead to such a result in many circumstances. ■ The peril may be of such a nature that the only chance of safety for both ship and cargo is the transfer of the latter to lighters in the vicinity of a harbor or to a convoy at sea. The safety of different portions of the goods and of the vessel may thus be insured at different points of time during the peril. But the master representing all interests must be impartial to all. He cannot in such a case, exempt the property of one owner from entire contribution by selecting it from the mass and placing it first in a situation of safety.
 
 (Bevan
 
 v.
 
 The United States
 
 Bank, 4 Whar., 301, 308.) .The aggregate expense of providing for the safety of all interests must be borne according to the value of each. A different doctrine would lead to a conflict of rights and interests, and give to the master the arbitrary power of protecting one at the expense of another.
 

 But suppose a ship takes fire, having on board a cargo which can only be saved by extinguishing the flames as quickly as possible. There is, however, a box of jewelry or a quantity of gold dust of ten times greater value than the cotton or lumber with which the vessel is loaded. The heavy freight must abide the fate of the vessel because there is no other means of saving it. 'The jewelry or the gold maybe placed out of the danger by transferring it to another vessel in sight. The duty of the master in such a case is plainly to hail the ship and make the transfer. In such a case there is not, in a just sense, a community of peril. The property incapable of removal is subject to whatever of danger is occasioned by the fire. The gold is not involved in that peril because it can be put in safety by remo
 
 *51
 
 val. In such a case, must there be a community of loss? It seems to me not. If the assistance of the friendly vessel is. required only to take care of the value transferred to it, the charge in the nature of salvage should rest upon that value alone, while on the other hand there should be no contribution in favor of the vessel in distress and her remaining cargo for losses wholly unconnected with the safety of the article .transferred. The owner of the gold may be himself on board. The proximity of another vessel is to him absolute exemption from the peril to his property, while to others it only offers the certainty of saving life. The circumstances, all considered, do not involve his interest in the danger. Why then should they involve him in the losses incurred in averting the danger ? If the owner being present could thus separate himself from the peril by seizing a means of safety peculiar to his own interest, the same effect must be given to the act of the master who represents him.
 

 The question can be placed in a still stronger light. Suppose a vessel having reached her port of destination takes fire before the landing of the cargo. The heavy freights are incapable of immediate removal, and in order to save it as well as the vessel the fire must be extinguished. But the specie on board can be landed and thus separated from the peril. It may well happen, indeed, that specie-is the only freight. In such an exigency may not the consignee extricate his property from the impending danger without liability to contribute for the loss or damage of the ship. The doctrine of general average requires contribution for sacrifices made to avert a common danger. Where there is no community of peril there is none in the loss. In the case supposed it may be necessary to scuttle the ship or submerge it with water by the aid of fire engines. Great damage may thus ensue to the freights which cannot be moved, if there be any such, and to the vessel itself. The interests which are protected by the pleasures taken, and • those only, should, on principles of equity, bear the losses.
 

 In the present case the fire began at sea, but it was extinguished in the port of Charleston by the employment of fire
 
 *52
 
 companies, which' filled the vessel with water. The sacrifices and expenditures were: 1. The compensation paid to the fire companies; 2. The injury to the vessel; 8. The injury to the cotton on board which could not be separated from the danger. But the specie was landed and the measures taken to protect the ship and cotton had nothing to do with its safety. It may be of.no special importance that the specie had been previously transferred to the Danish brig. The brig was in the service of the vessel exposed to the peril. But both vessels were in port and the ■ specie could be landed from either. Charleston was not, it is true, the port of destination, but it was the port of-necessity where the- voyage was broken up and abandoned. The owners of the specie were entitled to receive it at that place without contribution for sacrifices and expenses to which the ship and the cotton were exposed, but from which their property was exempt.
 

 I am of opinion, therefore, that the judgment should be reversed and a new trial granted.
 

 Clerks, J., also dissented.
 

 Judgment affirmed.